# 15-891-cr

---

## UNITED STATES COURT OF APPEALS

For the

## SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

v.

KARIM GOLDING,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of New York

---

### BRIEF & SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

Harry C. Batchelder, Jr., Esq.
40 Wall Street
28th Floor
*On the Brief:*                    New York, New York 10005
Megan Wolfe Benett, Esq.,          (212) 502-0660
*Of Counsel*                       lubiyanka@aol.com

Table of Contents

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................1

JURISDICTIONAL STATEMENT ...................................................4

STATEMENT OF THE ISSUES PRESENTED...............................5

STATEMENT OF THE CASE...........................................................6

   I.  The First Trial and Mistrial ...................................................7

   II.  The Second Trial.....................................................................8

      A.  Shield 6331's Testimony ........................................................8

      B.  Detective Ramos's Testimony About July 13, 2006.................11

      C.  The Rest of the Government Case as to the Events of July 13, 2006 .......12

      D.  The Jury Instructions and Charge on Count Eleven ..................14

      E.  The Guilty Verdict and Verdict Form ......................................16

      F.  The First Sentencing Proceeding ............................................16

      G.  The Second Sentencing.........................................................17

SUMMARY OF THE ARGUMENT ................................................20

ARGUMENT ....................................................................................20

   I.  The 10-year mandatory-minimum sentence imposed on Count Eleven for discharging a firearm must be vacated because Karim Golding was convicted only of the lesser offense of possessing, using or carrying a firearm, which carries a 5-year mandatory minimum sentence...............................................21

      A.  The error was plain ...................................................22

      B.  The error affected Mr. Golding's Substantial Rights ................24

      C.  The error affected the fairness, integrity or public reputation of judicial proceedings ........................................................26

   II.  The Five-Year Mandatory Minimum Sentence on the Drugs Counts is Unconstitutional ...................................................31

CONCLUSION .................................................................................34

i

# Table of Authorities

## Cases

*Alleyne v. United States*, 133 S.Ct. 2151 (2013)................................................ passim
*Harris v. United States*, 536 U.S. 545 (2002)...........................................................21
*Henderson v. United States*, 133 S.Ct. 1121 (2013)................................................23
*Johnson v. United States*, 520 U.S. 469 (1997) ................................................ 22, 23
*Miller v. Alabama*, 132 S.Ct. 2455 (2012)................................................................32
*Solem v. Helm*, 463 U.S. 277 (1983).........................................................................32
*United States v. Cotton*, 535 U.S. 625 (2002)............................................. 24, 28, 31
*United States v. Dantzler*, 771 F.3d 137 (2d Cir. 2014) ................................... 22, 25
*United States v. Deandrade*, 600 F.3d 115 (2d Cir. 2010) .....................................25
*United States v. Doe,* 297 F.3d 76 (2d Cir. 2002) ...................................................27
*United States v. Fell*, 531 F.3d 197 (2d Cir. 2008)...................................................21
*United States v. Folkes*, 622 F.3d 152 (2d Cir. 2010) .............................................27
*United States v. Lara-Ruiz*, 721 F.3d 554 (8th Cir. 2013)......................................24
*United States v. Lewis*, 802 F.3d 449 (3d Cir. 2015)...............................................24
*United States v. Marcus*, 560 U.S. 258 (2010) ........................................................27
*United States v. Olano*, 507 U.S. 725 (1993) ............................................. 21, 22, 24
*United States v. Reingold*, 731 F.3d 204 (2d Cir.2013)...........................................21
*United States v. Sanchez*, 773 F.3d 389 (2d Cir. 2014) ..................................... 25, 27
*United States v. Santana*, 552 Fed. App'x 87 (2d Cir. 2014)..................................28
*Weems v. United States*, 217 U.S. 349 (1910) .........................................................32

## Statutes

18 U.S.C. § 3231 .........................................................................................................4
18 U.S.C. § 3742 .........................................................................................................4
18 U.S.C. § 922 ...........................................................................................................6
18 U.S.C. § 924 ................................................................................................. *passim*
21 U.S.C. § 841 ................................................................................... 1, 6, 28, 31
21 U.S.C. § 846 ...........................................................................................................6
28 U.S.C. § 1291 .........................................................................................................4

## Rules

Federal Rule of Criminal Procedure 52 .......................................................... *passim*

ii

Federal Rules of Appellate Procedure 4(b)...............................................................4

# PRELIMINARY STATEMENT

After being convicted at trial before the Hon. Allyne R. Ross in the Eastern District of New York, defendant-appellant Karim Golding was sentenced to 15 years in prison on the basis of two statutory mandatory minimum terms: 5 years for narcotics trafficking (21 U.S.C. § 841(b)(1)(A)) and 10 years for discharge of a firearm in relation to narcotics trafficking (18 U.S.C. § 924(c)(1)(A)(iii)). This was error for two independent reasons. First, under *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the 10-year sentence for the firearm count was unconstitutional as it was based on a judicial finding that Mr. Golding had discharged a weapon when the jury had convicted Mr. Golding solely of the lesser offense of using, carrying or possessing a weapon under 18 U.S.C. § 924(c)(1)(A)(i), which carries only a 5-year mandatory minimum sentence. Second, the circumscribed scope of Mr. Golding's criminal misconduct does not warrant the imposition of the mandatory minimum sentence on the narcotics convictions.

Mr. Golding was charged in an eleven-count indictment with, as relevant to this appeal, conspiring to distribute cocaine base and distributing (or attempting to distribute) cocaine base and powder cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A), (B) and (C) five times over the course of one month in 2006 (Counts One through Six) and using or carrying a firearm during and in relation to a single

1

drug transaction during that period in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Eleven).

After a first jury could not reach a verdict and a mistrial was declared, Mr. Golding was retried. At the close of evidence at the second trial, as to Count Eleven (the use of a firearm in furtherance of the narcotics crimes) the district court instructed the jurors that to convict Mr. Golding they had to find that the government had proven beyond a reasonable doubt that the defendant had knowingly used, carried or possessed a firearm in relation to a specific attempted drug sale *but did not need to find that he discharged the weapon*. The second jury convicted Mr. Golding of all counts.

Upon his first appeal, this Court vacated Mr. Golding's convictions on Counts Eight through Ten. At resentencing, believing itself constrained by a total statutory mandatory minimum sentence of 15 years, the district court imposed the mandatory minimum term of imprisonment of 5 years for the narcotics convictions in Counts One, Three, Four and Six (and concurrent terms for Counts Two, Five and Seven) and a consecutive 10 year mandatory minimum term for the firearm conviction in Count Eleven on the basis that Mr. Golding had discharged the weapon in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The district court stated that absent the statutory mandatory minimums it would have imposed a shorter sentence.

2

Under *Alleyne*, the 10-year sentence for Count Eleven was error as the jury did not find the element of "discharge" proven beyond a reasonable doubt and it must, therefore, be vacated. Further, given the limited scope of misconduct here, the long mandatory minimum sentence on the drug charges was unreasonably disproportionate to the criminal conduct and should be vacated, as well.

# JURISDICTIONAL STATEMENT

This appeal is taken from an amended judgment imposing a 15-year term of imprisonment on defendant-appellant Karim Golding by the Honorable Allyne R. Ross, United States District Court Judge for the Eastern District of New York, entered on March 12, 2015. SA. 1.[1] The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 because this was a criminal case alleging violations of the laws of the United States. Jurisdiction in this appeal is therefore invoked in this Court pursuant to 28 U.S.C. § 1291, providing for appeal from a final decision of a district court, and 18 U.S.C. § 3742(a), providing for appeal of a sentence imposed under the Sentencing Reform Act. On March 25, 2015, appellant filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. A. 22.

---

[1] References to appellant's special appendix, included with this brief, are noted as "SA." followed by the page cited. References to the appendix are noted as "A." followed by the page cited. The reports submitted by the United States Probation Department and not docketed publicly are included as a Confidential Appendix and those are noted by "CA." followed by the page cited.

## STATEMENT OF THE ISSUES PRESENTED

1. Must the 10-year mandatory minimum sentence that the district court imposed on Count Eleven for the discharge of a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(iii) be vacated when the jury convicted the defendant solely of the lesser offense of possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i), which is subject only to a 5-year mandatory minimum sentence? YES

2. Is the mandatory minimum sentence on the narcotics charges so disproportionate to the conduct for which the defendant was convicted and the drug weight for which he was held responsible that the sentence for Counts One through Six must be vacated? YES

## STATEMENT OF THE CASE

Karim Golding was charged in the Eastern District of New York with being involved in several narcotics and firearms sales to an undercover New York Police Department officer during a one-month period in the summer of 2006.  In the final superseding indictment, Mr. Golding was charged with:

- Conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(A) (Count One);

- Distributing cocaine base in violation of 21 U.S.C. § 841(b)(1)(B) on June 15, June 22 and June 29, 2006 (Counts Two, Three and Four);

- Distributing powder cocaine on June 29, 2006 in violation of 21 U.S.C. § 841(b)(1)(C) (Count Five);

- Attempted distribution of cocaine base on July 13, 2006 in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count Six);

- Illegally dealing in firearms between June 7 and June 29, 2006 in violation of 18 U.S.C. § 922(a)(1)(A) and 924(a)(1)(D) (Count Seven);

- Being a felon in possession of a firearm on June 7, June 29 and July 13, 2006 in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts Eight, Nine and Ten); and

- "Use of a firearm" in relation to a drug trafficking crime between June 15 and July 13, 2006 in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Eleven).[2]

---

[2] While the indictment titles Count Eleven as "Use of a Firearm", it recites the statutory subsection applicable to discharge of a firearm.  Even if Mr. Golding had been indicted for discharge of a firearm, however, the jury was instructed only as to use of a firearm under 18 U.S.C. § 924(c)(1)(A)(i), as discussed in detail herein.

A. 23 – 30.

The acts underlying each charge took place in or around South Jamaica, Queens, in particular the South Jamaica Houses (a New York City Housing Authority development colloquially known as "the 40's") as well as the Rochdale Village housing complex a few miles away from the 40s. A. 65 – 69, 306. The charges arose out of seven meetings between Mr. Golding and an undercover New York Police Department officer, the first two occurring in late May or early June 2006 and the rest on June 7, June 15, June 22, June 29 and July 13 of the same year. Mr. Golding was arrested on July 13, 2006.

## I.     The First Trial and Mistrial

The case went to trial in early September 2008.  Over the course of three days the government presented 11 witnesses, all but one of them from law enforcement agencies.  (The only civilian witness was a trauma surgeon who treated a gunshot victim.)  The testimony about Mr. Golding's role in the distribution – or attempted distribution – of narcotics and his involvement with firearms came primarily from an undercover New York Police Department officer identified only as "Shield 6331."  Shield 6331 was the only undercover officer involved in the investigation and was the only witness to testify at trial with personal knowledge of the purported drug and gun transactions and Mr. Golding's alleged statements.  After three days of testimony, the jury received the case but

7

ultimately could not reach a verdict. A. 32 – 50.  Notes from the jury showed that

one or more members were struggling with the conduct of the police witnesses

during the course of the investigation and the absence of any evidence to

corroborate the testimony (presumably from Shield 6331) about Mr. Golding's

criminal conduct. A. 35 – 37, 44.  Ultimately the court declared a mistrial. A. 46 –

50.

## II.    The Second Trial

At the second trial, the government presented largely the same evidence as at

the first.  Of the government's witnesses, only Shield 6331, who dealt directly with

Mr. Golding, and New York Police Department Detective Juancarlo Ramos, who

supervised the investigation, had any first-hand knowledge of the investigation and

the facts underlying the charges.

### A.    Shield 6331's Testimony

According to Shield 6331, he first came to know Mr. Golding through a

confidential informant being paid by the NYPD. A. 65, 147 – 48, 280 – 81.  In late

May or early June 2006 the confidential informant introduced Shield 6331 to

Karim Golding. A. 66.  Both the confidential informant and Mr. Golding were

dressed as orthodox Jewish individuals; Mr. Golding is of Afro-Caribbean descent,

the confidential informant also had a dark complexion and the meeting took place

in South Jamaica, a predominantly black neighborhood. A. 65 – 66, 157.  To gain

8

Mr. Golding's confidence, Shield 6331 dressed as an orthodox Jewish male and when they all met a third time, on June 7, 2006, the officer told Mr. Golding that he needed weapons to protect his community against a "Muslim[] uprising." A. 80, 146, 149 – 50, 153 – 54.[3] Shield 6331 came up with this story on the fly and without any approval from his supervisors. A. 154, 313.

Shield 6331 testified that at their initial meeting Mr. Golding agreed to obtain guns and crack cocaine for him and described each of the subsequent dates when drug and gun transactions occurred as well as the days when the officer claimed to have seen Mr. Golding with a firearm.

Specifically, Shield 6331 testified that on June 7, 2006, with the confidential informant in the car, Mr. Golding sold Shield 6331 two firearms. A. 74 – 78. Shield 6331 said that, then, on June 15, 2006, again with the confidential informant in the car, Mr. Golding directed him to drive to the 40's projects to pick up the crack cocaine that Shield 6331 was purchasing. A. 82 – 83. Shield 6331 said that he confirmed the substance that Mr. Golding gave him on June 15 was crack cocaine by "put[ting] it near [his] face" and smelling it. A. 85, 174 – 75.[4] At the

_____

[3] Despite the trio looking like orthodox Jewish individuals conducting criminal transactions in a predominantly African-American neighborhood, according to the officers involved in the investigation, the men did not attract undue public attention. A. 290.

[4] Shield 6331's testimony that he determined that the substances he purchased from Mr. Golding were powder or base cocaine by their smell was directly contradicted

9

third meeting, on June 22, 2006, Shield 6331 met with Mr. Golding and the

confidential informant and Mr. Golding put Shield 6331 directly in contact with

another man who sold Shield 6331 crack cocaine (with Shield 6331 again

confirming the nature of the substance by smelling it) and then gave Mr. Golding

$160 for the introduction to the third person. A. 90 – 93.  The fourth transaction

took place on June 29, 2006, at which time Shield 6331 bought another handgun

from Mr. Golding, two ounces of crack cocaine from the third person (once again,

determined to be crack cocaine by a smell test) and just under an ounce of powder

cocaine that Mr. Golding had obtained from yet another person. A. 96 – 101.

Shield 6331 taped the June, 29, 2006 meeting with Mr. Golding, but none of the

other transactions or meetings were recorded. A. 104 – 105, 194 – 95.

The final meeting between Shield 6331 and Mr. Golding took place on July

13, 2006, when Shield 6331 attempted to purchase three ounces of crack cocaine as

well as a .380 firearm that Shield 6331 testified Mr. Golding was carrying that day.

A. 120 – 22.  According to Shield 6331, the July 13, 2006 purchase smelled like

"soap" and when he later confirmed that the narcotics were "beat" (that is, fake),

he contacted Mr. Golding. A. 123 – 24.  Later, still on July 13, 2006, Shield 6331

met with Mr. Golding again in Shield 6331's car. A. 125.  Mr. Golding took the

by the two NYPD chemists who testified for the prosecution. A. 357 – 60.  Those
witnesses explained that there was no reliable method for determining if a
substance was crack or powder cocaine based on its smell and, indeed, the NYPD
has no policy endorsing a "smell test" for cocaine or cocaine base. A.357 – 60.

"beat" crack cocaine from Shield 6331, exited the vehicle and walked quickly out of the officer's field of vision. A. 187. About 10 to 15 minutes later, Shield 6331 heard two gun shots fired, but did not see who fired them. A. 187. Soon therafter, Mr. Golding returned to Shield 6331's car and purportedly claimed to have shot somebody twice in the chest, but that statement was neither recorded nor corroborated by other witnesses. A. 188.[5]

## B. Detective Ramos's Testimony About July 13, 2006

New York Police Department Detective Juancarlo Ramos was the only other witness present when gunshots were heard on July 13, 2006 who testified about the events of that day. A. 220 – 355. On July 13, 2006, Detective Ramos saw a black male get into and then exit Shield 6331's car; that individual walked toward a basketball court area in the Rochdale Village apartment complex. A. 266 – 67. There were a "bunch" of men congregating as a group in the area of the basketball courts that night. A. 324 – 25. Detective Ramos did not maintain surveillance of the individual who exited Shield 6331's car, noting only that the black male crossed a street and passed out of his view. A. 267 - 68. Then, Detective Ramos heard two shots, but did not see the shooting and could only identify the shots as

---

[5] Shield 6331 testified that Mr. Golding said he wanted to go to back home "to get [his] AK-47," but Mr. Golding was never charged with possessing or selling such a weapon, nor was any such weapon recovered from his house nor did Shield 6331 even record this purported statement, despite recognizing that the statement was "important" to an investigation into the sale and use of firearms. A. 189, 192.

coming "from the area where [he] saw the group of individuals hanging out." A. 324, 338. Detective Ramos heard someone yell "Yo, Ream, get out of here." A. 268.[6] While "a bunch of people" started running from the direction where the shots were fired, Detective Ramos did not see Karim Golding run past him. A. 325. Indeed, at no point while near Rochdale Village on July 13, 2006 did Detective Ramos see someone whom he could identify as Karim Golding, despite knowing what the defendant looked like. A. 322. Then, Detective Ramos saw someone he could only identify as a black male enter Shield 6331's car. A. 269 – 70. The car eventually stopped and a person exited and went into a bodega at which point Detective Ramos entered the store and arrested Mr. Golding. A. 270 – 72. At the time of the arrest, Detective Ramos testified that he retrieved a .380 caliber Davis semi-automatic pistol from Mr. Golding's front pants pocket. A. 272 – 73. Though the bodega had a video camera, the NYPD did not bother to retrieve any surveillance footage or still photographs of Mr. Golding in the store during his search or arrest. A. 325 – 26.

### C. The Rest of the Government Case as to the Events of July 13, 2006

Though throughout the investigation there were several other NYPD officers who conducted surveillance as part of the field team working on the investigation

---

[6] "Ream" was Mr. Golding's nickname. Despite the acknowledged importance of this statement, Detective Ramos never recorded it in his NYPD memo book, nor could he identify who made the statement. A. 323 – 24.

(A. 156) – at some times driving in "loop[s]" around where Shield 6331 was meeting with Mr. Golding (A. 73 – 74), at other times parked right next to Shield 6331 and Mr. Golding (A. 66 – 67) – no one took photographs of any transactions between Shield 6331 and Mr. Golding, nor even any photographs in which the two men appeared together. A. 151, 156 – 59.

The police never checked any of the weapons or packages containing drugs that Mr. Golding was accused of selling or the firearm seized on July 13, 2006 for fingerprints. A. 249, 256, 262, 273, 311 – 12. The only audio recording of any illegal activity involved the June 29, 2006 meeting, but that tape was very poor quality. A. 336 – 38, 353 – 54. There was no audio or video recording of what transpired on July 13, 2006. A. 337.

New York Police Department personnel went to the Rochdale Village complex on the night of July 13, 2006 and recovered a single .380 discarded shell casing (introduced as Government Exhibit 22). A. 356, 363 – 64. An NYPD firearm analyst testified that the shell casing was fired from the .380 caliber Davis gun that Detective Ramos said he recovered from Mr. Golding. A. 362. Still, no witness testified that the shell casing was discharged from a weapon on the night of July 13, 2006 or that the .380 Davis was fired by Mr. Golding.

The victim of the July 13, 2006 shooting was a man named Sean Banks. Mr. Banks sustained two bullet wounds on the right side of his chest, was treated at

13

Jamaica Hospital Medical Center and survived the shooting. A. 142 – 44. Mr. Banks did not testify at trial. No witness identified Mr. Golding as Sean Banks's shooter. No witness introduced evidence of a second .380 shell casing (as would have been expected to be found had Mr. Golding fired his weapon at Mr. Banks twice on the night of July 13, 2006.)

Nevertheless, in its summation, the government argued, among other things, that "Count Eleven[] is for shooting Sean Banks in connection with the sale of the sham drugs [on July 13, 2006.]" A. 365. The prosecutor further told the jury that to convict on Count Eleven, the jury needed only "to find that [Mr. Golding] used the gun in connection with a narcotics sale … ." A. 365.

At summations, as at the first trial, defense counsel's argument was that the police testimony was not credible and the lack of corroboration fatally flawed the government case. A. 368 – 90.

### D. The Jury Instructions and Charge on Count Eleven

The district court's written jury instruction on Count Eleven was as follows:

For you to find Mr. Golding guilty of the crime charged in Count Eleven… you must find that the government has proven the following three elements beyond a reasonable doubt:

**First**, that Mr. Golding committed the specific drug trafficking crime charged in Count Six of the indictment [the July 13, 2006 attempted drug sale]; and

**Second**, that Mr. Golding *used or carried* a firearm during and in relation to the commission of, or possessed a firearm in furtherance of, the drug trafficking crime charged in Count Six; and

14

**Third**, that Mr. Golding acted knowingly.

A 451 (italics added). Regarding the second element, the jury instruction read:

### Second Element - Using, Carrying, or Possessing a Firearm

The second element the government must prove beyond a reasonable doubt is that the defendant *used or carried a firearm during and in relation to, or possessed a firearm in furtherance of*, the commission of the drug trafficking crimes charged in Count Six.

The second element of the crime is satisfied if the government proves beyond a reasonable doubt that Mr. Golding *"used"* a firearm during and in relation to the underlying drug trafficking crime. … *The government does not, however, need to show that a defendant fired or even attempted to fire the firearm. It is enough for the government to show that he brandished or displayed the weapon or otherwise made reference to it in a manner calculated to further the commission of the underlying crime.*

*The second element is also satisfied if the government proves beyond a reasonable doubt that a defendant "carried" a firearm during and in relation to the underlying drug trafficking crime. In order to prove that a defendant "carried" a firearm, the government must prove beyond a reasonable doubt that the defendant had a firearm within his control in such a way that it furthered the commission of the drug trafficking crime or was an integral part of the commission of that crime….*

Finally, *the second element is satisfied if the government proves beyond a reasonable doubt that a defendant possessed a firearm in furtherance of the underlying drug trafficking crime.* …

To summarize, *the second element is satisfied if the government proves any one of these three statutory requirements beyond a reasonable doubt: (1) that Mr. Golding used a firearm during and in relation to the drug trafficking crime charged in Count Six; (2) that Mr. Golding carried a firearm during and in relation to that crime, or (3) that Mr. Golding possessed a firearm in furtherance of that crime.*

15

A. 452 – 54 (italics added.)  The district court orally charged the jury consistent with these written jury instructions. A. 431 – 36.

### E.  The Guilty Verdict and Verdict Form

The verdict form stated "COUNT ELEVEN (Using, Carrying, Possessing a Firearm) … How do you find the defendant, Karim Golding?  Guilty ___  Not Guilty ___ ." A. 455. The jury checked the box next to "guilty." A. 455.

### F.  The First Sentencing Proceeding

Following Mr. Golding's conviction, the Department of Probation prepared a Pre-Sentence Investigation Report ("PSI Report") that mimicked Shield 6331's testimony about the July 13, 2006 incident. CA. 7 – 9.  The PSI Report described Count Eleven as "Use *and Discharge* of a Firearm in Relation to a Drug Trafficking Crime," even though the conviction was solely for using a firearm. CA, 14 (emphasis added).  It then concluded that the statutorily required sentence for Count Eleven was "not less than a 10-year term of imprisonment." CA. 14.

The PSI Report also held Mr. Golding responsible for 189.70 grams of base cocaine and 26.58 grams of powder cocaine. CA. 10 – 11.  Relying on United States Sentencing Guideline § 2D1.1 and the Drug Equivalency Conversion Tables, based on Mr. Golding's conduct over the course of a single month in 2006, the Probation Department assessed him as being responsible for an amount of powder cocaine and cocaine base equivalent to over 3,800 kilograms of marijuana. CA. 10.

16

Defense counsel objected to the sentencing consequences of this calculation, arguing that the mandatory minimum term on the drug convictions, which attributed substantially greater culpability for distributing crack cocaine as opposed to powder cocaine, was "repugnant" and "ludicrous." A. 465 – 79.

On November 30, 2009, the district court sentenced Mr. Golding.  It imposed a term of 10 years on Counts One through Ten (which included a statutory mandatory minimum sentence on Counts One, Three, Four and Six) and, believing itself constrained by a mandatory minimum sentence of 10 years under 18 U.S.C. § 924(c)(1)(A)(iii), imposed a consecutive 10 year term on Count Eleven. A. 524 – 25; SA. 12.  The total sentence was thus 20 years in prison. SA. 12.

### G. The Second Sentencing

Upon his first appeal, this Court vacated Counts Eight, Nine and Ten and remanded the matter to the district court for resentencing.  By the time Mr. Golding was resentenced, Congress had amended the federal narcotics trafficking laws and the weight of drugs attributable to Mr. Golding triggered only a 5-year statutory mandatory minimum on the narcotics charges.  The factual allegations as to Count Eleven remained the same in the amended PSI Report as they were in the Probation Department's original submission to the district court.  CA. 31 – 33.  As he had prior to the initial sentencing, Mr. Golding's counsel argued that the

17

statutory mandatory minimum sentence for the drugs was disproportionate and without a reasonable basis and that Mr. Golding should be sentenced as though the substances involved were only powder cocaine, which would entirely remove any mandatory minimum sentence on the narcotics charges (as no minimum would be triggered had all of the transactions involved powder cocaine). A. 529 – 545.

At the resentencing on March 11, 2015, defense counsel again vigorously argued against the mandatory minimum sentence on the drug counts and asked the district court to impose a total term of imprisonment of 10 years, arguing that the weight of cocaine base should be treated as the equivalent of powder cocaine. A. 548 - 52.  In doing so, counsel highlighted Mr. Golding's exemplary institutional record and argued that the sentence to which Mr. Golding was exposed unfairly punished the defendant. A. 551 – 56.

In response, the prosecution simply noted that "we are constrained that there is a 15-year mandatory minimum here." A. 557.

Clearly moved by the positive changes in Mr. Golding's conduct and circumstances, the district court wanted to impose less than a 15 year term, but believed it could not do so.  The judge explained that the case required "a mandatory 15-year minimum sentence" – 5 years for the narcotics and 10 years for the weapon – that constrained the court's discretion. A. 548, 558.  The district court went on to tell the parties that it would "have to do what we know I'm going

18

to have to do," but that "if I did not have to do it, I would not impose this sentence, I would impose a lesser sentence." A. 557 – 58.  Believing it was "constrained by the [statutory] mandatory minimum," which it thought was "15 years," however, the district court "therefore[] sentence[d] Mr. Golding to the custody of the Attorney General for a period of 15 years," with the sentence on Count Eleven being "120 months … to run consecutively to all of the other counts."A. 558.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The sentence in this case must be vacated for two independent reasons. First, the district court imposed a 10-year mandatory minimum sentence on Count Eleven based on Mr. Golding's discharge of a weapon when the jury convicted him solely of using, possessing or carrying the firearm, which carries only a 5-year mandatory minimum term of imprisonment. Second, in light of the relatively small amount of drugs for which Mr. Golding could be held responsible under federal law, the statutory mandatory minimum sentence was so disproportionate to the facts here as to render it unconstitutional.

## ARGUMENT

With respect to the 10-year mandatory minimum sentence for discharge of a firearm, because Mr. Golding did not object below,[7] review of this issue falls within the plain error standard set forth in Federal Rule of Criminal Procedure 52(b). Under that test, relief is warranted if there was an "error" that was "plain" and that "affect[ed] substantial rights" when such an error "seriously affect[ed] the

---

[7] Defense counsel did object to the 10-year term on the section 924(c) conviction running consecutive to any other sentence. A. 459 – 64. Were this Court to liberally construe that objection as preserving the issue as to the mandatory minimum term for discharging a weapon when the jury only convicted Mr. Golding of using, carrying or possessing a weapon, then review would be under the more defendant-favorable harmless error standard and the burden would fall on the government to establish that the district court's sentencing error did not harm Mr. Golding.

20

fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 734 – 37 (1993).

As to the mandatory minimum sentence on the narcotics counts, Mr. Golding preserved that issue and his objection on that point was grounded in the absence of a rational underpinning to that statutory term of imprisonment and the fundamental unfairness in the narcotics statute, arguments premised on the Eighth Amendment to the Constitution. This Court reviews *de novo* whether a statutory minimum sentence violates the Constitution. *United States v. Reingold,* 731 F.3d 204, 210 (2d Cir. 2013); *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008).

**I.      The 10-year mandatory-minimum sentence imposed on Count Eleven for discharging a firearm must be vacated because Karim Golding was convicted only of the lesser offense of possessing, using or carrying a firearm, which carries a 5-year mandatory minimum sentence**

In 2013 the United States Supreme Court expressly over-ruled *Harris v. United States*, 536 U.S. 545 (2002), and held in *Alleyne v. United States* that

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

133 S.Ct. at 2155 (internal citation omitted). The failure to submit an "element" of the crime to a jury violates a criminal defendant's Sixth Amendment and Due Process rights to have his or her guilt of the crime proved to a jury beyond a

reasonable doubt. *Id.* at 2156, 2158. A violation of this right requires that the higher mandatory minimum sentence be vacated. *Id.* at 2163 – 64.

Here, Mr. Golding was sentenced to a 10-year mandatory minimum term on Count Eleven because of an "element" of the crime – discharging a weapon – that was never submitted to the jury. That was error; the error was plain, affected Mr. Golding's substantial constitutional rights and seriously affected the fairness, integrity or public reputation of judicial proceedings. The sentence on Count Eleven must, therefore, be vacated.

## A. The error was plain

Under Supreme Court precedent, the first two prongs of plain-error review look to whether there was "(1) 'error,' (2) that is 'plain.'" *Johnson v. United States*, 520 U.S. 469, 467 (1997).

Regarding the first prong, a district court commits an error when it fails to follow applicable legal rules or binding precedent during the course of judicial proceedings. *Olano*, 507 U.S. at 734; *United States v. Dantzler*, 771 F.3d 137, 146 (2d Cir. 2014) (district court erred by relying on materials outside the scope of what was authorized under Supreme Court precedent for purposes of finding defendant fell within the Armed Career Criminal Act).

As for the second prong, " 'plain' is synonymous with 'clear,' or, equivalently, 'obvious.'" *Olano*, 507 U.S. at 734. When the law at the time of trial

22

(or sentencing) "was settled and clearly contrary to the law at the time of appeal …

it is enough that an error be 'plain' at the time of appellate consideration."

*Johnson*, 520 U.S. at 468; *see also Henderson v. United States*, 133 S.Ct. 1121,

1125 (2013) (even if the law was unsettled at time of the error, "as long as the error

was plain as of … the time of appellate review … the error is 'plain' within the

meaning of … Rule [52(b)].")  And "where a defendant's sentence enhancement is

based on a fact that should have been found by the jury," it is well-settled law in

this Circuit that the error is plain. *United States v. Rosemond*, 595 Fed. App'x 26

(2014).

In this case, as to Count Eleven, the jury was instructed that there were three

elements that had to be proved beyond a reasonable doubt.  One of those elements

was that "Mr. Golding *used or carried* a firearm" in relation to the July 13, 2006

drug count.  When defining "used or carried" for the jury, the district court assured

the jury that "[t]he government does not … need to show that a defendant fired or

even attempted to fire the firearm."  The verdict form reflected this admonition,

directing the jury to answer on Count Eleven solely whether Karim Golding used,

carried or possessed a firearm.  The jury thus did not conclude that the evidence

establish beyond a reasonable doubt that Mr. Golding discharged a weapon but,

instead, only that he had used, possessed or carried a firearm.  Section

924(c)(1)(A)(i), the crime of which Mr. Golding was convicted in Count Eleven,

carries a mandatory minimum sentence – or, in the language of *Alleyne*, a "floor" –
of only five years in prison.

Just as in *Alleyne*, "[h]ere, the sentencing range supported by the jury's
verdict was five years' imprisonment to life." 133 S.Ct. at 2163. In light of
*Alleyne*, because the district court imposed a 10-year term mandatory minimum
term for Count Eleven on the basis of Mr. Golding's discharge of the weapon,
which was neither presented to nor found beyond a reasonable doubt by the jury,
the district court committed an error that was plain. *See United States v. Lara-Ruiz*,
721 F.3d 554, 558 (8th Cir. 2013) (vacating judgment and remanding for
resentencing under plain error review of *Alleyne* argument); *see also United States
v. Lewis*, 802 F.3d 449 (3d Cir. 2015) (on harmless error review, court holds that
sentencing defendant to 7-year mandatory minimum term for brandishing a firearm
after being convicted only of using or carrying a firearm was Sixth Amendment
violation warranting relief.)

**B.     The error affected Mr. Golding's Substantial Rights**

The third prong of Rule 52(b) looks to whether the error "affect[ed]
substantial rights." This phrase "means that the error must have been prejudicial:
It must have affected the outcome of the district court proceedings." *Olano*, 507
U.S. at 734; *see also United States v. Cotton*, 535 U.S. 625, 632 (2002) (affecting
substantial rights "usually means that the error must have affected the outcome of

the district court proceedings.") (internal quotation marks and citation omitted).

When a defendant's sentence is based on a fact that should have been found by a

jury, the "affecting substantial rights" prong is "generally satisfied." *Rosemond*,

595 Fed App'x 26.

When, as here, the factual determination underlying the first two prongs of

the Rule 52(b) analysis "trigger[s]" an enhanced sentence, it affects the defendants

substantial rights for purposes of Rule 52(b)'s third prong. *United States v.*

*Dantzler*, 771 F.3d 137, 148 (2d Cir. 2014) ("an error in calculating the mandatory

minimum must have made a difference in the defendant's sentence in order to

affect a defendant's substantial rights"); *see also United States v. Sanchez*, 773

F.3d 389, 392 (2d Cir. 2014) (If the error made a difference in the defendant's

sentence, then the error affected the defendant's substantial rights.); *cf. United*

*States v. Deandrade*, 600 F.3d 115 (2d Cir. 2010) (error in calculating mandatory

minimum sentence did not substantially affect defendant's rights because district

court "made clear" that the sentence imposed was not influenced by the erroneous

mandatory minimum term). "To determine whether the District Court's

erroneously-calculated mandatory minimum affected [the defendant's] sentence,"

this Court is "required to look to 'the record as a whole.'" *Sanchez*, 773 F.3d at

392.

25

At the most recent sentencing proceedings, the district court observed that were it free from statutory requirements it "would not impose" a total mandatory minimum sentence of 15 years. Indeed, the judge explained that while it would "have to do what we know I'm going to have to do," she further stated that "if I did not have to do it, I would not impose this sentence, I would impose a lesser sentence." But, believing it was "constrained by the [statutory] mandatory minimum," which it thought was "15 years," the district court "therefore[] sentence[d] Mr. Golding to the custody of the Attorney General for a period of 15 years," with the sentence on Count Eleven being "120 months … to run consecutively to all of the other counts."

The record as a whole establishes that the court's erroneous belief that Count Eleven carried a mandatory minimum 10-year sentence did not simply influence the sentencing determination but was, in fact, the sole basis for the term of imprisonment imposed on Count Eleven. Had the sentencing judge understood that the mandatory minimum sentence on all charges totaled only 10 years (5 years for the drugs and 5 years for the 924(c)), it would have imposed a shorter term. The district court's plain error therefore affected Mr. Golding's substantial rights.

## C.   The error also affected the fairness, integrity or public reputation of judicial proceedings

The fourth prong of the Rule 52(b) analysis looks to whether the error "seriously affected the 'fairness, integrity, or public reputation of judicial

26

proceedings.'" *Sanchez*, 773 F.3d at 393, quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010). As this Court has previously held, a sentence calculated in violation of a constitutional right to have an element of the charged crime presented to a jury seriously affects the fairness and public reputation of judicial proceedings and warrants relief under plain error review. *United States v. Doe,* 297 F.3d 76, 91 (2d Cir. 2002) (vacating and remanding for resentencing after finding plain-error's fourth prong satisfied because "[a]fter *Apprendi* and *Thomas*, a defendant has a constitutional right to have drug quantity that will raise his sentence beyond the otherwise applicable statutory maximum established by a jury beyond a reasonable doubt").

When, as here, an assumption of the wrong mandatory minimum sentence "permeates the record" and the error caused a defendant to face a longer sentence than he might have otherwise, those factors alone establish that "the fairness and integrity of the judicial proceedings were seriously affected by the District Court's error." *Sanchez*, 773 F.3d at 393 – 94; *see also United States v. Folkes*, 622 F.3d 152, 158 (2d Cir. 2010) ("because the district court's determination of an appropriate sentence was influenced by a Guidelines range that was more than twice the correct range … we exercise our discretion to correct the error as one that 'seriously affect[ed] the fairness ... of judicial proceedings.'" (quoting *Doe,* 297 F.3d at 82).

27

While the Supreme Court has carved out an exception to the fourth-prong requirement for those cases in which the evidence at trial on the element that was not presented to a jury was both "overwhelming" and "essentially uncontroverted," neither can be said to have been true in this case.

In *United States v. Cotton*, the Supreme Court reversed the Fourth Circuit's conclusion that the failure to charge drug quantity in the indictment deprived the district court of jurisdiction to impose a sentence above the statutory maximum for an offense involving an indeterminate quantity of narcotics. 535 U.S. at 632. In doing so, the Supreme Court detailed the weight of drugs seized during the relevant time period and the testimony of cooperating witnesses who were party to the drug activities, all of which established through witnesses with first-hand knowledge that the drug quantity easily exceeded the statutory weight that permitted the court to impose a life sentence. *Id.* Additionally, the defendants in *Cotton* "never argued that the conspiracy involved less than 50 grams of cocaine base, which is the relevant quantity for purposes of *Apprendi*, as that is the threshold quantity for the penalty of life imprisonment in 21 U.S.C. § 841(b)(1)(A)." *Id.* n. 3. Given the overwhelming and uncontroverted evidence of the drug quantity, the Supreme Court held that failure to submit the element to a jury was not error. *Id.; see also United States v. Santana*, 552 Fed. App'x 87 (2d Cir. 2014) (in section 924(c) case, though jury did not convict on the brandishing

28

element, testimony from witnesses who observed defendant use gun to threaten victim was sufficiently uncontroverted and overwhelming that the fourth prong of plain error was not satisfied.)

Here, on the other hand, the evidence that Mr. Golding discharged a weapon in relation to a drug trafficking crime was neither overwhelming nor uncontroverted.

The government presented no testimony from a witness to the shooting. The victim never identified Mr. Golding as the shooter. No photographs documented the shooting, nor any of the purported drug and gun transactions. Although several police officers who were part of the tactical team on July 13, 2006 were monitoring the area where the shooting took place, none could testify as to whom discharged a weapon on July 13, 2006. Detective Ramos's testimony that after the shooting he heard "yo, Ream, get out of here" no more established that Mr. Golding discharged his weapon than that a weapon was discharged at him or was simply discharged in his vicinity. Despite a full tactical team on site on July 13, 2006, no police witness could testify about where Mr. Golding was at the time of the shooting. The testimony was that two shots were fired on July 13, 2006, but the police retrieved only a single shell casing matching a weapon that the police testified was taken from Mr. Golding. The weapon that matched the shell casing was supposedly seized from Mr. Golding while he was in a bodega with a security camera that

would have recorded the arrest and weapon seizure, but the police did not obtain a

copy of that recording.  Mr. Golding's purported July 13, 2006 confession about

the shooting was witnessed only by Shield 6331.  Shield 6331, however, had

serious credibility issues.  He testified that Mr. Golding claimed to have an AK-47,

but that testimony was undermined by the fact that no law enforcement personnel

investigated the existence of such a dangerous weapon, nor did Shield 6331 even

memorialize the statement in writing.  Shield 6331's testimony that he could

"smell" crack was directly controverted by the police chemists. [8]  While the police

had the means to record the meetings with Mr. Golding, including the July 13,

2006 meetings, which would have corroborated Shield 6331's allegation that Mr.

Golding confessed to a shooting, none of the transactions on that day were audio or

video taped.  No fingerprints linked Mr. Golding to the drugs or gun involved in

the events of July 13, 2006.

Not only was the evidence on the discharge element not overwhelming, it

was also vigorously controverted.  The defense theory was that the police

testimony was neither credible nor corroborated and that the government had failed

to adequately establish the elements of the crimes charged, including with respect

---

[8] Perhaps unsurprisingly, then, as demonstrated by their notes at the end of the first
trial, the first jury had problems with Shield 6331's testimony and did not find him
sufficiently credible to establish beyond a reasonable doubt that Mr. Golding had
even possessed a weapon in relation to the attempted sale of a narcotic on July 13,
2006, let alone discharged one

to the events of July 13, 2006. That is, the issue of the weapon discharge was most certainly not uncontroverted.

Given that proof that Mr. Golding discharged the weapon was neither overwhelming nor uncontroverted (let alone both), the *Cotton* exception to the fourth prong of the plain error analysis does not apply here.

The sentence in this case, premised as it was on a plainly erroneous interpretation of the applicable statutory mandatory minimum term, threatens the fairness, integrity and public reputation of judicial proceedings such as to require action to correct the plain error. Accordingly, the sentence on Count Eleven must be vacated.

## II. The Five-Year Mandatory Minimum Sentence on the Drugs Counts is Unconstitutional

The acts forming the basis of Mr. Golding's conviction all took place over the course of approximately a single month in the summer of 2006. During the investigation, the government purchased less than 140 grams of cocaine base and just over 25 grams of powder cocaine. If the cocaine base were treated on a one-to-one basis with powder cocaine, no mandatory minimum sentence would have come into play on the narcotics charges, as the total weight of drugs at issue here was less than the 500 grams of cocaine that triggers the 5-year minimum prison term. Instead, Mr. Golding would have been sentenced pursuant to 21 U.S.C. § 841(b)(1)(C), which carries no mandatory minimum prison term. But because the

31

drugs involved here were cocaine base, despite the circumscribed scope of his criminal activity, Mr. Golding was exposed to a 5-year mandatory minimum term in prison.

The mandatory minimum sentence in this case is unreasonably excessive and unconstitutional under the Eighth Amendment's prohibition of cruel and unusual punishment. *Miller v. Alabama*, 132 S.Ct. 2455, 2463 (2012). The protection against excessive punishment "flows from the 'basic precept of justice that punishment for crime should be graduated and proportioned'" to the offender and the offense. *Weems v. United States*, 217 U.S. 349, 367 (1910). The Supreme Court has held that a term of imprisonment may amount to cruel and unusual punishment if it is disproportionate to the offense conduct. *Solem v. Helm*, 463 U.S. 277, 290 – 92 (1983).

In this case, Mr. Golding was subject to a mandatory minimum term because of the weight of cocaine base for which he was held responsible. Had the narcotics involved alone been powder cocaine, the district court would have been unrestrained from any statutory minimum sentence. Punishing Mr. Golding disproportionately based on the cocaine for which he was responsible being in base form as opposed to powder is unsupported by any rational sentencing or policy goals. As one political leader has explained, "current disparity in cocaine sentencing simply cannot be justified based upon the facts as we know them today.

… Each of the myths upon which we based the sentencing disparity has since been dispelled or altered." Statement of then-Sen. Joseph Biden, Chairman of the United States Senate Committee on the Judiciary, Time Change: Federal Cocaine Sentencing Laws Reforming the 100 to 1 Crack Power Disparity, Feb. 12, 2008, http://www.judiciary.senate.gov/imo/media/doc/biden_statement_02_12_08.pdf, last accessed Dec. 8, 2015.

In addition to disproportionately punishing him because of the type of cocaine involved, Mr. Golding has proven himself worthy of a non-statutory mandatory minimum sentence. Over the course of his imprisonment, Mr. Golding has had an exemplary institutional record, even though he was initially designated to the F.C.I. Herlong in California, where violence is endemic and assaults and stabbings are almost the norm. Mr. Golding exhausted every educational and vocational course he was allowed to take. He spent seven years at that institution with no family visits (because his relatives could not afford to travel to see him) and without being able to participate in a drug program or advanced vocational training due to the length of his sentence. Facing those challenges, Mr. Golding nevertheless avoiding joining a gang and over the course of seven years had no institutional problems.

Because the mandatory minimum sentence triggered on the narcotics counts was based entirely on the form of the cocaine involved in the five transactions

33

having been base and not powder, and had the cocaine been in powder form no

such minimum sentence would apply, the mandatory minimum sentence imposed

on Counts One through Six should be held unconstitutional and those sentences

vacated.

## CONCLUSION

The district court's sentence on Count Eleven was based on an element of

the crime never presented to the jury and unsupported by overwhelming and

uncontroverted evidence.  It must, therefore, be vacated.  Additionally, the

sentence on Counts One through Six was so disproportionate to the conduct at

issue as to render it unconstitutional and it, too must be vacated. For all of the

reasons set forth herein, defendant-appellant Karim Golding respectfully requests

that his sentence be vacated and that this case be remanded for resentencing.

Dated this 9th day of December 2015.

Respectfully submitted,

By:   /s/ Megan Wolfe Benett
Megan Wolfe Benett, Esq.
750 Third Avenue, 32nd Floor
New York, NY 10017
Telephone: (212) 973-3406
Fax: (212) 972-9432
mbenett@kreindler.com

Harry C. Batchelder, Jr. Esq.
40 Wall Street, 28th Floor
New York, NY 10005
Telephone: (212) 502-0660

34

*Attorneys for Defendant-Appellant,*
*Karim Golding*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed.R.App.P. 32(a)(7)(B) and Second Circuit Rule 32.1, that this brief is reproduced using proportional typeface of Times New Roman, 14 points in size, is double-spaced and consists of 7,949 words, as calculated in the word count program in Microsoft Word, including footnotes and headings and quotations.

Dated:  December 9, 2015

By_____/s/ Megan Wolfe Benett

SPECIAL APPENDIX

## TABLE OF CONTENTS

Amended Judgment, Dated March 12, 2015 ..................................................... SA-1

Judgment, Dated December 1, 2009 ............................................................. SA-9

U.S Consititution Fifth Amendment ............................................................. SA-17

U.S Consititution Sixth Amendment ............................................................. SA-18

U.S Consititution Eighth Amendment ........................................................... SA-19

18 U.S.C.A. § 924 ..................................................................................... SA.-20

21 U.S.C.A. § 841 ..................................................................................... SA.-29

AO 245C (Rev. 06/2005) Amended Judgment in a Criminal Case    Case 1:07-cr-00621-ARR    Document 260    Filed 03/12/15    Page 1 of 6 PageID #: 333    (NOTE: Identify Changes with Asterisks (*))
Sheet 1

# UNITED STATES DISTRICT COURT

EASTERN                    District of                    NEW YORK

UNITED STATES OF AMERICA
### V.
KARIM GOLDING

**AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number: CR-07-621(ARR)
USM Number: 64376-053
HARRY C. BATCHELDER, ESQ

**Date of Original Judgment:** 11/30/2009
(Or Date of Last Amended Judgment)

Defendant's Attorney

**Reason for Amendment:**

☑ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant    ☐ 28 U.S.C. § 2255 or
   ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)    one through eleven of the superseding indictment.
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21USC 841(a)(1), 846 & 841(b)(1)(B)(iii) | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH THE INTENT TO DISTRIBUTE COCAINE BASE. | 7/5/2007 | 1 |
| 21 USC 841(a)(1) & | DISTRIBUTION AND POSSESSION WITH INTENT TO | 7/5/2007 | 2 |

The defendant is sentenced as provided in pages 2 through ___11___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/11/2015
Date of Imposition of Judgment

Signature of Judge

ALLYNE R. ROSS                    U.S.D.J.
Name of Judge                     Title of Judge

3/11/2015
Date

SA1

AO 245C (Rev. 06/05) Amended Judgment in a Criminal Case    Document 280    Filed 03/12/15    Page 2 of 3 PageID #: 1954
Sheet TA                                                      (NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING                          Judgment — Page __2__ of __11__
CASE NUMBER: CR-07-621(ARR)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 841(b)(1)(C) | DISTRIBUTE COCAINE BASE. | | |
| 21 USC 841(a)(1) & 841(b)(1)(B)(iii) | DISTRIBUTION AND POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE. | 7/5/2007 | 3 & 4 |
| 21 USC 841(a)(1) & 841(b)(1)(C) | DISTRIBUTION AND POSSESSION WITH INTENT TO DISTRIBUTE COCAINE. | 7/5/2007 | 5 |
| 21 USC 841(a)(1), 846 & 841(b)(1)(B)(iii) | ATTEMPTED DISTRIBUTION AND POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE. | 7/5/2007 | 6 |
| 18 USC 922(a)(1)(A) & 924(a)(1)(D) | UNLAWFUL DEALING IN FIREARMS. | 7/5/2007 | 7 |
| 18 USC 924(c)(1)(A)(iii) | POSSESSION, USE & DISCHARGE OF A FIREARM IN FUTHERANCE OF A DRUG TRAFFICKING CRIME. | 7/5/2007 | 11 |

SA2

AO 245C (Rev. 06/05) Amended Judgment in a Criminal Case Document 260 Filed 03/12/15 Page 3 of 8 PageID #: 1955
Sheet 2 — Imprisonment (NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(ARR)

Judgment — Page __3__ of __11__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of

ONE HUNDRED EIGHTY (180) MONTHS.

☑ The court makes the following recommendations to the Bureau of Prisons:

IT IS STRONGLY RECOMMENDED, THAT THE DEFT BE PLACED IN A FACILITY AS CLOSE AS POSSIBLE TO THE NEW YORK METROPOLITAN AREA.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m ☐ p.m. on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By_____
DEPUTY UNITED STATES MARSHAL

SA3

AO 245C (Rev. 09/05) Amended Judgment in a Criminal Case
Sheet 2A — Imprisonment

Case 1:07-cr-00621-ARR Document 260 Filed 03/12/15 Page 4 of 9 PageID #: 1956

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(ARR)

Judgment—Page _____ of _____11_____

## ADDITIONAL IMPRISONMENT TERMS

Accordingly the deft is sentenced on counts one through seven to 60 months incarceration which shall run concurrently. As to count eleven the deft is sentenced to 120 months incarceration to run consecutively to counts one through seven for a total of 180 months incarceration.

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(ARR)

Judgment—Page __4__ of __11__

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of

**FOUR (4) YEARS.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within forty eight hours after such change;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record, personal history, or characteristics and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification requirement.

AO 245C (Rev. 09/05) Amended Judgment in a Criminal Case
Sheet 3A — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(ARR)

Judgment—Page __5__ of __11__

## ADDITIONAL SUPERVISED RELEASE TERMS

1) Deft shall submit his person, residence, place of business, vehicle or any other premises under his control to a search upon request, by the U.S. Probation Department; such request being made on REASONABLE SUSPICION that contraband or evidence of a violation of a condition of supervision may be found -- and pursuant to the formal policy of the U.S. Probation Department. The search is only to be conducted at a time and in a manner reasonable under the circumstances. Failure by the deft to submit to a search may be grounds for revocation; and the deft shall inform any other residents that the premises may be search pursuant to this condition.

SA6

AO 245C (Rev. 06/05) Amended Judgment in a Criminal Case ent 260   Filed 03/12/15   Page 7 of 8 PageID #: 1959
Sheet 5 — Criminal Monetary Penalties                                                    (NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(ARR)

Judgment — Page __6__ of __11__

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 800.00 | $ | $ |

☐☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ | $ |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☐ the interest requirement is waived for  ☐ fine  ☐ restitution.

    ☐ the interest requirement for  ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SA7

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments                                    (NOTE: Identify Changes with Asterisks (*))

DEFENDANT: KARIM GOLDING                          Judgment — Page ___7___ of ___11___
CASE NUMBER: CR-07-621(ARR)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A ☐ Lump sum payment of $ __800.00__ due immediately, balance due

   ☐ not later than _____ , or
   ☐ in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

   Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

SA8

Case 1:07-cr-00621-ARR  Document 185  Filed 12/01/09  Page 1 of 8 PageID #: 1574

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
    Sheet I

# UNITED STATES DISTRICT COURT

_____EASTERN_____    District of _____NEW YORK_____

UNITED STATES OF AMERICA    **JUDGMENT IN A CRIMINAL CASE**
V.

**KARIM GOLDING**

Case Number:   CR-07-621(arr)

USM Number:   64376-053

HARRY C. BATCHELDER, ESQ
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☑ was found guilty on count(s)    one through eleven of the superseding indictment.
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21USC 841(a)(1), 846 & | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH | 7/5/2007 | 1 |
| 841(b)(1)(A)(iii) | THE INTENT TO DISTRIBUTE COCAINE BASE. | | |
| 21 USC 841(a)(1) & | DISTRIBUTION AND POSSESSION WITH INTENT TO | 7/5/2007 | 2 |

The defendant is sentenced as provided in pages 2 through __12__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____    ☐ is    ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/30/2009
Date of Imposition of Judgment

Signature of Judge

ALLYNE R. ROSS    U.S.D.J.
Name of Judge    Title of Judge

11/30/2009
Date

SA9

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 1A

Judgment—Page **2** of **12**

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(arr)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 841(b)(1)(A)(iii) | DISTRIBUTE COCAINE BASE. | | |
| 21 USC 841(a)(1) & | DISTRIBUTION AND POSSESSION WITH INTENT | 7/5/2007 | 3 & 4 |
| 21 USC 841(a)(1) & | TO DISTRIBUTE COCAINE BASE. | | |
| 21 USC 841(a)(1) & | DISTRIBUTION AND POSSESSION WITH INTENT | 7/5/2007 | 5 |
| 841(b)(1)(C) | TO DISTRIBUTE COCAINE. | | |
| 21 USC 841(a)(1), 846 | ATTEMPTED DISTRIBUTION AND POSSESSION | 7/5/2007 | 6 |
| & 841(b)(1)(A)(iii) | WITH INTENT TO DISTRIBUTE COCAINE BASE. | | |
| 18 USC 922(a)(1)(A) & | UNLAWFUL DEALING IN FIREARMS. | 7/5/2007 | 7 |
| 924(a)(1)(D) | | | |
| 18 USC 922(g)(1) & | FELON IN POSSESSION OF A FIREARM. | 7/5/2007 | 8,9 & 10 |
| 924(a)(2) | | | |
| 18 USC 924(c)(1)(A)(iii) | POSSESSION, USE & DISCHARGE OF A | 7/5/2007 | 11 |
| | FIREARM IN FUTHERANCE OF A DRUG | | |
| | TRAFFICKING CRIME. | | |

AO 245B   (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __3__ of __12__

DEFENDANT:  KARIM GOLDING
CASE NUMBER:  CR-07-621(arr)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

TWO HUNDRED FORTY (240) MONTHS.

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐ a.m.  ☐ p.m.  on _____

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to  _____

at _____, w ith a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

SA11

AO 245B      (Rev. 06/05) Judgment in a Criminal Case
. Sheet 2A — Imprisonment

Judgment—Page   4   of   12

DEFENDANT:  KARIM GOLDING
CASE NUMBER:  CR-07-621(arr)

## ADDITIONAL IMPRISONMENT TERMS

Accordingly the deft is sentenced on counts one through six to 120 months incarceration which shall run concurrently to counts seven , eight , nine & ten. As to count seven 60 months incarceration is imposed to run concurrently with counts one through six and eight through ten. As to counts eight, nine and ten a sentenced of 120 months incarceration is imposed to run concurrently with one through six and seven.  As to count eleven the deft is sentenced to 120 months incarceration to run consecutively to counts one through ten for a total of 240 months incarceration.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:  KARIM GOLDING
CASE NUMBER:  CR-07-621(arr)

Judgment—Page ___5___ of ___12___

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

FIVE (5) YEARS.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☐   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

SA13

Case 1:07-cr-00621-ARR Document 185 Filed 12/01/09 Page 6 of 8 PageID #: 1579

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           . Sheet 3A — Supervised Release

DEFENDANT: KARIM GOLDING
CASE NUMBER: CR-07-621(arr)

Judgment—Page    6    of    12

## ADDITIONAL SUPERVISED RELEASE TERMS

1) If excluded; deft shall not re-enter the United States illegally.

2) Deft shall submit his person, residence, place of business, vehicle or any other premises under his control to a search upon request, by the U.S. Probation Department; such request being made on  REASONABLE SUSPICION that contraband or evidence of a violation of a condition of supervision may be found – and pursuant  to the formal policy of the U.S. Probation Department. The search is only to be conducted at a time and in a manner reasonable under the circumstances. Failure by the deft to submit to a search may be grounds for revocation; and the deft shall inform any other residents that the premises may be search pursuant to this condition.

SA14

AO 245B    (Rev. 9/05) Judgment in a Criminal Case    Document 185    Filed 12/01/09    Page 7 of 8 PageID #: 1580
          Sheet 5 — Criminal Monetary Penalties

DEFENDANT: KARIM GOLDING

CASE NUMBER:  CR-07-621(arr)

| | | Judgment — Page | 7 | of | 12 |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 1,100.00 | $ | $ |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $      0.00 | $      0.00 | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   the interest requirement is waived for the    ☐ fine   ☐ restitution.

    ☐   the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Document 155    Filed 12/03/09    Page 8 of 3 PageID #: 1581

DEFENDANT:  KARIM GOLDING
CASE NUMBER:  CR-07-621(arr)

Judgment — Page  8  of  12

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☑ Lump sum payment of $  1,100.00  due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

SA16

# RIGHTS OF PERSONS

## FIFTH AMENDMENT

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

# RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS

## SIXTH AMENDMENT

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

# EIGHTH AMENDMENT

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

§ 924. Penalties, 18 USCA § 924

KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or Preempted   **Held Unconstitutional by**   Johnson v. U.S.,   U.S.,   June 26, 2015

KeyCite Yellow Flag - Negative Treatment   Proposed Legislation

United States Code Annotated
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         Chapter 44. Firearms (Refs & Annos)

18 U.S.C.A. § 924

§ 924. Penalties

Effective: October 6, 2006
Currentness

**(a)(1)** Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever--

**(A)** knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

**(B)** knowingly violates subsection (a)(4), (f), (k), or (q) of section 922;

**(C)** knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l); or

**(D)** willfully violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both.

**(2)** Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

**(3)** Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly--

**(A)** makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or

**(B)** violates subsection (m) of section 922,

shall be fined under this title, imprisoned not more than one year, or both.

**(4)** Whoever violates section 922(q) shall be fined under this title, imprisoned for not more than 5 years, or both. Notwithstanding any other provision of law, the term of imprisonment imposed under this paragraph shall not run concurrently with any other term of imprisonment imposed under any other provision of law. Except for the authorization of a term of imprisonment of not more than 5 years made in this paragraph, for the purpose of any other law a violation of section 922(q) shall be deemed to be a misdemeanor.

**(5)** Whoever knowingly violates subsection (s) or (t) of section 922 shall be fined under this title, imprisoned for not more than 1 year, or both.

**(6)(A)(i)** A juvenile who violates section 922(x) shall be fined under this title, imprisoned not more than 1 year, or both, except that a juvenile described in clause (ii) shall be sentenced to probation on appropriate conditions and shall not be incarcerated unless the juvenile fails to comply with a condition of probation.

**(ii)** A juvenile is described in this clause if--

**(I)** the offense of which the juvenile is charged is possession of a handgun or ammunition in violation of section 922(x)(2); and

**(II)** the juvenile has not been convicted in any court of an offense (including an offense under section 922(x) or a similar State law, but not including any other offense consisting of conduct that if engaged in by an adult would not constitute an offense) or adjudicated as a juvenile delinquent for conduct that if engaged in by an adult would constitute an offense.

**(B)** A person other than a juvenile who knowingly violates section 922(x)--

**(i)** shall be fined under this title, imprisoned not more than 1 year, or both; and

**(ii)** if the person sold, delivered, or otherwise transferred a handgun or ammunition to a juvenile knowing or having reasonable cause to know that the juvenile intended to carry or otherwise possess or discharge or otherwise use the handgun or ammunition in the commission of a crime of violence, shall be fined under this title, imprisoned not more than 10 years, or both.

**(7)** Whoever knowingly violates section 931 shall be fined under this title, imprisoned not more than 3 years, or both.

**(b)** Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined under this title, or imprisoned not more than ten years, or both.

**(c)(1)(A)** Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or

Case 15-891, Document 29, 12/09/2015, 1660379, Page64 of 81

device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection--

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall--

(i) be sentenced to a term of imprisonment of not less than 25 years; and

(ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

(D) Notwithstanding any other provision of law--

(i) a court shall not place on probation any person convicted of a violation of this subsection; and

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

(2) For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--

§ 924. Penalties, 18 USCA § 924

**(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

**(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**(4)** For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

**(5)** Except to the extent that a greater minimum sentence is otherwise provided under this subsection, or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries armor piercing ammunition, or who, in furtherance of any such crime, possesses armor piercing ammunition, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime or conviction under this section--

**(A)** be sentenced to a term of imprisonment of not less than 15 years; and

**(B)** if death results from the use of such ammunition--

**(i)** if the killing is murder (as defined in section 1111), be punished by death or sentenced to a term of imprisonment for any term of years or for life; and

**(ii)** if the killing is manslaughter (as defined in section 1112), be punished as provided in section 1112.

**(d)(1)** Any firearm or ammunition involved in or used in any knowing violation of subsection (a)(4), (a)(6), (f), (g), (h), (i), (j), or (k) of section 922, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922(l), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: *Provided,* That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

**(2)(A)** In any action or proceeding for the return of firearms or ammunition seized under the provisions of this chapter, the court shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

**(B)** In any other action or proceeding under the provisions of this chapter, the court, when it finds that such action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

**(C)** Only those firearms or quantities of ammunition particularly named and individually identified as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States or as intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure, forfeiture, and disposition.

**(D)** The United States shall be liable for attorneys' fees under this paragraph only to the extent provided in advance by appropriation Acts.

**(3)** The offenses referred to in paragraphs (1) and (2)(C) of this subsection are--

**(A)** any crime of violence, as that term is defined in section 924(c)(3) of this title;

**(B)** any offense punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) or the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.);

**(C)** any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title, where the firearm or ammunition intended to be used in any such offense is involved in a pattern of activities which includes a violation of any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title;

**(D)** any offense described in section 922(d) of this title where the firearm or ammunition is intended to be used in such offense by the transferor of such firearm or ammunition;

**(E)** any offense described in section 922(i), 922(j), 922(l), 922(n), or 924(b) of this title; and

**(F)** any offense which may be prosecuted in a court of the United States which involves the exportation of firearms or ammunition.

**(e)(1)** In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

**(2)** As used in this subsection--

**(A)** the term "serious drug offense" means--

**(i)** an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

**(ii)** an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

**(B)** the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

**(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or

**(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

**(C)** the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

**(f)** In the case of a person who knowingly violates section 922(p), such person shall be fined under this title, or imprisoned not more than 5 years, or both.

**(g)** Whoever, with the intent to engage in conduct which--

**(1)** constitutes an offense listed in section 1961(1),

**(2)** is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46,

**(3)** violates any State law relating to any controlled substance (as defined in section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6))), or

**(4)** constitutes a crime of violence (as defined in subsection (c)(3)),

travels from any State or foreign country into any other State and acquires, transfers, or attempts to acquire or transfer, a firearm in such other State in furtherance of such purpose, shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

§ 924. Penalties, 18 USCA § 924

**(h)** Whoever knowingly transfers a firearm, knowing that such firearm will be used to commit a crime of violence (as defined in subsection (c)(3)) or drug trafficking crime (as defined in subsection (c)(2)) shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

**(i)(1)** A person who knowingly violates section 922(u) shall be fined under this title, imprisoned not more than 10 years, or both.

**(2)** Nothing contained in this subsection shall be construed as indicating an intent on the part of Congress to occupy the field in which provisions of this subsection operate to the exclusion of State laws on the same subject matter, nor shall any provision of this subsection be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this subsection.

**(j)** A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall--

**(1)** if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and

**(2)** if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

**(k)** A person who, with intent to engage in or to promote conduct that--

**(1)** is punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

**(2)** violates any law of a State relating to any controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802); or

**(3)** constitutes a crime of violence (as defined in subsection (c)(3)),

smuggles or knowingly brings into the United States a firearm, or attempts to do so, shall be imprisoned not more than 10 years, fined under this title, or both.

**(l)** A person who steals any firearm which is moving as, or is a part of, or which has moved in, interstate or foreign commerce shall be imprisoned for not more than 10 years, fined under this title, or both.

**(m)** A person who steals any firearm from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall be fined under this title, imprisoned not more than 10 years, or both.

(n) A person who, with the intent to engage in conduct that constitutes a violation of section 922(a)(1)(A), travels from any State or foreign country into any other State and acquires, or attempts to acquire, a firearm in such other State in furtherance of such purpose shall be imprisoned for not more than 10 years.

(o) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.

(p) Penalties relating to secure gun storage or safety device.--

(1) In general.--

(A) Suspension or revocation of license; civil penalties.--With respect to each violation of section 922(z)(1) by a licensed manufacturer, licensed importer, or licensed dealer, the Secretary may, after notice and opportunity for hearing--

(i) suspend for not more than 6 months, or revoke, the license issued to the licensee under this chapter that was used to conduct the firearms transfer; or

(ii) subject the licensee to a civil penalty in an amount equal to not more than $2,500.

(B) Review.--An action of the Secretary under this paragraph may be reviewed only as provided under section 923(f).

(2) Administrative remedies.--The suspension or revocation of a license or the imposition of a civil penalty under paragraph (1) shall not preclude any administrative remedy that is otherwise available to the Secretary.

CREDIT(S)

(Added Pub.L. 90-351, Title IV, § 902, June 19, 1968, 82 Stat. 233; amended Pub.L. 90-618, Title I, § 102, Oct. 22, 1968, 82 Stat. 1223; Pub.L. 91-644, Title II, § 13, Jan. 2, 1971, 84 Stat. 1889; Pub.L. 98-473, Title II, §§ 223(a), 1005(a), Oct. 12, 1984, 98 Stat. 2028, 2138; Pub.L. 99-308, § 104(a), May 19, 1986, 100 Stat. 456; Pub.L. 99-570, Title I, § 1402, Oct. 27, 1986, 100 Stat. 3207-39; Pub.L. 100-649, § 2(b), (f)(2)(B), (D), Nov. 10, 1988, 102 Stat. 3817, 3818; Pub.L. 100-690, Title VI, §§ 6211, 6212, 6451, 6460, 6462, Title VII, §§ 7056, 7060(a), Nov. 18, 1988, 102 Stat. 4359, 4360, 4371, 4373, 4374, 4402, 4403; Pub.L. 101-647, Title XI, § 1101, Title XVII, § 1702(b)(3), Title XXII, §§ 2203(d), 2204(c), Title XXXV, §§ 3526, 3527, 3528, 3529, Nov. 29, 1990, 104 Stat. 4829, 4845, 4857, 4924; Pub.L. 103-159, Title I, § 102(c), Title III, § 302(d), Nov. 30, 1993, 107 Stat. 1541, 1545; Pub.L. 103-322, Title VI, § 60013, Title XI, §§ 110102(c), 110103(c), 110105(2), 110201(b), 110401(e), 110503, 110504(a), 110507, 110510, 110515(a), 110517, 110518(a), Title XXXIII, §§ 330002(h), 330003(f)(2), 330011(i), (j), 330016(1)(H), (K), (L), Sept. 13, 1994, 108 Stat. 1973, 1998, 1999, 2000, 2011, 2015, 2016, 2018, 2019, 2020, 2140, 2141, 2145, 2147; Pub.L. 104-294, Title VI, § 603(m)(1), (n) to (p)(1), (q) to (s), Oct. 11, 1996, 110 Stat. 3505; Pub.L. 105-386, § 1(a), Nov. 13, 1998, 112 Stat. 3469; Pub.L. 107-273, Div. B, Title IV, § 4002(d)(1)(E), Div. C, Title I, § 11009(e)(3), Nov. 2, 2002, 116 Stat. 1809, 1821; Pub.L. 109-92, §§ 5(c)(2), 6(b), Oct. 26, 2005, 119 Stat. 2100, 2102; Pub.L. 109-304, § 17(d)(3), Oct. 6, 2006, 120 Stat. 1707.)

## AMENDMENT OF SECTION

<Pub.L. 100-649, § 2(f)(2)(B), (D), Nov. 10, 1988, 102 Stat. 3818, as amended Pub.L. 101-647, Title XXXV, § 3526(b), Nov. 29, 1990, 104 Stat. 4924; Pub.L. 105-277, Div. A, § 101(h) [Title VI, § 649], Oct. 21, 1998, 112 Stat. 2681-528; Pub.L. 108-174, § 1, Dec. 9, 2003, 117 Stat. 2481; Pub.L. 113-57, § 1, Dec. 9, 2013, 127 Stat. 656, provided that, effective 35 years after the 30th day beginning after Nov. 10, 1988 [see section 2(f)(1) of Pub.L. 100-649, set out as a note under 18 U.S.C.A. § 922], subsec. (a)(1) of this section is amended by striking "this subsection, subsection (b), (c), or (f) of this section, or in section 929" and inserting "this chapter"; subsec. (f) of this section is repealed; and subsecs. (g) through (o) of this section are redesignated as subsecs. (f) through (n), respectively.>

## VALIDITY

<The United States Supreme Court has held that the imposition of an increased sentence under the residual clause of the Armed Career Criminal Act (18 U.S.C.A. § 924 (e)(2)(B)(ii)), violates the Constitution's guarantee of due process. Johnson v. U.S., U.S. June 16, 2015, 135 S.Ct. 2551, 192 L.Ed.2d 569, 2015 WL 2473450. >

Notes of Decisions (3081)

18 U.S.C.A. § 924, 18 USCA § 924
Current through P.L. 114-86 (excluding P.L. 114-74 and 114-81) approved 11-5-2015

   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or Preempted **Prior Version Held Unconstitutional by**    U.S. v. Grant,    C.D.Cal.,    Nov. 30, 2007

KeyCite Yellow Flag - Negative Treatment    Proposed Legislation

United States Code Annotated
  Title 21. Food and Drugs (Refs & Annos)
    Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
      Subchapter I. Control and Enforcement
        Part D. Offenses and Penalties

21 U.S.C.A. § 841

§ 841. Prohibited acts A

Effective: August 3, 2010
Currentness

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving--

(i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 1,000 or more marihuana plants regardless of weight; or

(viii) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of

at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(C)** In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

**(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(E)(i)** Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

**(ii)** If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

**(iii)** Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(2)** In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

**(3)** In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

**(4)** Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

**(5)** Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed--

**(A)** the amount authorized in accordance with this section;

**(B)** the amount authorized in accordance with the provisions of Title 18;

**(C)** $500,000 if the defendant is an individual; or

**(D)** $1,000,000 if the defendant is other than an individual;

or both.

**(6)** Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

    **(A)** creates a serious hazard to humans, wildlife, or domestic animals,

    **(B)** degrades or harms the environment or natural resources, or

    **(C)** pollutes an aquifer, spring, stream, river, or body of water,

shall be fined in accordance with Title 18 or imprisoned not more than five years, or both.

(7) Penalties for distribution

    (A) In general

Whoever, with intent to commit a crime of violence, as defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) of this section by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

    (B) Definition

For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

(c) Offenses involving listed chemicals

Any person who knowingly or intentionally--

    **(1)** possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

    **(2)** possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

    **(3)** with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

Next © 2015 Thomson Reuters. No claim to original U.S. Government Works.

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

(d) Boobytraps on Federal property; penalties; "boobytrap" defined

(1) Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

(2) If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

(3) For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device designed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

(e) Ten-year injunction as additional penalty

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

(f) Wrongful distribution or possession of listed chemicals

(1) Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

(2) Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

(g) Internet sales of date rape drugs

(1) Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

(A) the drug would be used in the commission of criminal sexual conduct; or

**(B)** the person is not an authorized purchaser;

shall be fined under this subchapter or imprisoned not more than 20 years, or both.

**(2)** As used in this subsection:

**(A)** The term "date rape drug" means--

**(i)** gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma butyrolactone (GBL) or 1,4-butanediol;

**(ii)** ketamine;

**(iii)** flunitrazepam; or

**(iv)** any substance which the Attorney General designates, pursuant to the rulemaking procedures prescribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

**(B)** The term "authorized purchaser" means any of the following persons, provided such person has acquired the controlled substance in accordance with this chapter:

**(i)** A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other heath [1] professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

**(ii)** Any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

**(iii)** A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

(3) The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

(h) Offenses involving dispensing of controlled substances by means of the Internet

(1) In general

It shall be unlawful for any person to knowingly or intentionally--

(A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

(B) aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

(2) Examples

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

(A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(f) of this title (unless exempt from such registration);

(B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

(C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections [2] 823(f) or 829(e) of this title;

(D) offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

(E) making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

(3) Inapplicability

(A) This subsection does not apply to--

(i) the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

(ii) the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without attempting to propose or facilitate an actual transaction involving a controlled substance; or

(iii) except as provided in subparagraph (B), any activity that is limited to--

(I) the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

(II) the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

(B) The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

(4) Knowing or intentional violation

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

**CREDIT(S)**

(Pub.L. 91-513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260; Pub.L. 95-633, Title II, § 201, Nov. 10, 1978, 92 Stat. 3774; Pub.L. 96-359, § 8(c), Sept. 26, 1980, 94 Stat. 1194; Pub.L. 98-473, Title II, §§ 224(a), 502, 503(b)(1), (2), Oct. 12, 1984, 98 Stat. 2030, 2068, 2070; Pub.L. 99-570, Title I, §§ 1002, 1003(a), 1004(a), 1005(a), 1103, Title XV, § 15005, Oct. 27, 1986, 100 Stat. 3207-2, 3207-5, 3207-6, 3207-11, 3207-192; Pub.L. 100-690, Title VI, §§ 6055, 6254(h), 6452(a), 6470(g), (h), 6479, Nov. 18, 1988, 102 Stat. 4318, 4367, 4371, 4378, 4381; Pub.L. 101-647, Title X, § 1002(e), Title XII, § 1202, Title XXXV, § 3599K, Nov. 29, 1990, 104 Stat. 4828, 4830, 4932; Pub.L. 103-322, Title IX, § 90105(a), (c), Title XVIII, § 180201(b)(2)(A), Sept. 13, 1994, 108 Stat. 1987, 1988, 2047; Pub.L. 104-237, Title II, § 206(a), Title III, § 302(a), Oct. 3, 1996, 110 Stat. 3103, 3105; Pub.L. 104-305, § 2(a), (b)(1), Oct. 13, 1996, 110 Stat. 3807; Pub.L. 105-277, Div. E, § 2(a), Oct. 21, 1998, 112 Stat. 2681-759; Pub.L. 106-172, §§ 3(b)(1), 5(b), 9, Feb. 18, 2000, 114 Stat. 9, 10, 13; Pub.L. 107-273, Div. B, Title III, § 3005(a), Title IV, § 4002(d)(2)(A), Nov. 2, 2002, 116 Stat. 1805, 1809; Pub.L. 109-177, Title VII, §§ 711(f)(1)(B), 732, Mar. 9, 2006, 120 Stat. 262, 270; Pub.L. 109-248, Title II, § 201, July 27, 2006, 120 Stat. 611; Pub.L. 110-425, § 3(e), (f), Oct. 15, 2008, 122 Stat. 4828, 4829; Pub.L. 111-220, §§ 2(a), 4(a), Aug. 3, 2010, 124 Stat. 2372.)

Notes of Decisions (7477)

Footnotes

1    So in original. Probably should be "health".

2    So in original. Probably should be "section".

§ 841. Prohibited acts A, 21 USCA § 841

21 U.S.C.A. § 841, 21 USCA § 841
Current through P.L. 114-86 (excluding P.L. 114-74 and 114-81) approved 11-5-2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.